### GRUELLE v. MOLLY-'ES DOLL OUTFITTERS, Inc., et al.
### No. 6243.

Circuit Court of Appeals, Third Circuit.

Dec. 23, 1937.

Howson & Howson and Charles H. Howson, all of Philadelphia, Pa. (Blair, Curtis, Dunne & Hayward and John W. Thompson, all of New York City, of counsel), for appellant.

Harry Langsam, of Philadelphia, Pa. (Peter P. Zion, of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

This is an appeal from a decree dismissing the bill of complaint in a suit brought by John B. Gruelle to enjoin trademark infringement and unfair competition upon the part of the appellees, to invalidate a design patent, No. 96,382, issued to the appellee, Mollye Goldman, by the United States Patent Office, and for certain other relief. A hearing was had upon a motion for a preliminary injunction, and thereafter it was stipulated by the parties that the decree entered should be a final decree; the affidavits filed in the proceeding for a preliminary injunction to stand as proved upon final hearing.

The appellant, the plaintiff below, under the name of "Johnny Gruelle," and prior to June 5, 1915, designed and made dolls of a very distinctive type to which he affixed labels bearing the trade-mark "Raggedy Ann." Some of these dolls were sold by Gruelle in interstate commerce after June 5, 1915, and for a short time thereafter. On June 17, 1915, Gruelle applied for and received a registration of trade-mark "Raggedy Ann" for dolls, being No. 107,328, issued by the United States Patent Office, and dated November 23, 1915. This was renewed by the Commissioner of Patents upon July 23, 1935. This trade-mark, the defendant below, Molly-'Es Doll Outfitters, Inc., now seeks to cancel by proceedings in the Patent Office, and restraint of these proceedings is prayed for in the bill of complaint filed by Gruelle. A design patent for a "Raggedy Ann" doll was granted to Gruelle by the Patent Office on September 7, 1915, and expired September 7, 1929. A design patent, No. 47,789, for a male doll, unnamed but substantially similar in appearance to a boy doll made to Gruelle's design and called by him "Raggedy Andy," was procured from the United States Patent Office by Mollye Goldman, being No. 96,382, on application filed May 7, 1935. The appellant seeks a declaration of invalidity of this design patent.

The appellees contend that the name "Raggedy Ann" originated in a poem by

James Whitcomb Riley called the "Raggedy Man," the heroine of which was called "Ann," and that Gruelle's grandmother first made a "Raggedy Ann" doll and a neighbor of hers first made a "Raggedy Andy" doll; but it is entirely apparent, and the record supports the appellant's contention, that Gruelle designed the first dolls sold in interstate commerce under the trade-mark "Raggedy Ann," and within a comparatively short time thereafter entered into a manufacturing arrangement with P. F. Volland Company to manufacture "Raggedy Ann" dolls, "Raggedy Andy" dolls, and other dolls of the same family characteristics. The "Raggedy Ann" dolls thus manufactured differed from the doll of Gruelle's design patent in some important particulars and were sold in interstate commerce under the trade-mark "Raggedy Ann" by the Volland Company. The manufacture and sale of the "Raggedy Ann" dolls by the Volland Company continued from 1918 to 1934, and the sales thereof totaled 115,000. Many "Raggedy Andy" dolls were also manufactured and sold and in this period, which lasted sixteen years, Gruelle wrote many books having to do with "Raggedy Ann," "Raggedy Andy," and dolls composing their family and friends. In addition to the foregoing, in collaboration with the late William H. Woodin, Gruelle wrote the words and music of songs about "Raggedy Ann" which were published under the title, "Raggedy Ann's Sunny Songs." Some 15,000 phonograph records were sold of the "Raggedy Ann's Sunny Songs" and nearly 2,-000,000 copies of the "Raggedy Ann" and associated books were sold. Gruelle holds copyrights upon approximately one-half of these books. From 1921 or 1922 until the year 1926, Gruelle published, through articles syndicated throughout the United States, cartoons and drawings featuring "Raggedy Ann" and "Raggedy Andy." From June, 1934, until the time of the commencement of this action, Gruelle syndicated further drawings of "Raggedy Ann" in many papers throughout the United States, and in connection with these papers Gruelle registered the words "Raggedy Ann" as a trade-mark under United States Patent Office certificate No. 318,-605, dated October 30, 1934. From all of the foregoing it is apparent that Gruelle literally brought to life in the minds of the American public "Raggedy Ann" and her companion, "Raggedy Andy." The learned trial judge stated in his opinion,

"I am quite ready to find in the language of one of the affidavits that 'Raggedy Ann' was known and loved by millions of children and has attained a place in the public esteem comparable to Mickey Mouse, Spark Plug, Skippy and other like public characters," and in this finding we concur.

In 1934, Volland Company discontinued the manufacture and sale of books and dolls because of the depression. As part of the closing out of this part of its business upon December 18, 1934, Volland Company assigned to Gruelle all right, title, and interest in the trade-marks "Raggedy Ann" and "Raggedy Andy," together with the good will of the business.

In April, 1935, Gruelle granted permission to Exposition Doll & Toy Manufacturing Company to manufacture and sell "Raggedy Ann" dolls under the trade-mark. At the time of the discontinuance of its business, Volland Company sold the book plates of the "Raggedy Ann" books to M. A. Donahue & Co., of Chicago, which thereupon proceeded to publish some of the "Raggedy Ann" books, with Gruelle's permission.

Mollye Goldman, one of the defendants below, states that in 1935 she was requested by buyers of various department stores to make a good rag doll. She was told by these buyers, according to the allegations of her affidavit, that "there was not a good rag boy doll on the market"; and that the "idea of a 'Raggedy Ann' doll came to her because she owned a 'Raggedy Ann' doll when she was a child, and the buyers wanted her to make a good rag doll." She proceeded to have the defendant, Molly-'Es Doll Outfitters, Inc., make dolls marked "Raggedy Ann" and "Raggedy Andy" of a design cut very closely to the design of Gruelle's dolls. In at least one instance Mrs. Goldman's dolls were offered for sale in a window display in a New York department store in conjunction with Gruelle's book, "Raggedy Ann Stories." In short there is no doubt that the defendants appropriated to their own use and for their own profit Gruelle's "Raggedy Ann" and "Raggedy Andy" and have attempted and are attempting to appropriate the market built up by Gruelle and those associated with him.

The appellees contend, however, that Gruelle is endeavoring through the suit at bar to establish a purely prohibitive right to the trade-marks "Raggedy Ann" and "Raggedy Andy" as a monopoly, and that he is attempting to make use of the

protection of a trade-mark in gross and without relation to an existing business. The learned District Judge found that Gruelle acquired the trade-mark "Raggedy Ann" by the assignment of December 18, 1934, but also found that the appellant abandoned the trade-mark because of non-user in an existing business. By its own admission, Molly-'Es Doll Outfitters, Inc., commenced the sale of dolls marked "Raggedy Ann" and "Raggedy Andy," deceptively similar in appearance to Gruelle's dolls, in November, 1934. Therefore at the actual time of the assignment by Volland Company to Gruelle, Molly-'Es Doll Outfitters, Inc., was already engaged in infringing these trade-marks which were then in use in an existing business. By the assignment itself Volland Company transferred to Gruelle "all claims for profits and damages by reason of past infringement of said marks or any of them by any party or parties with the right to sue for and collect the same for his own use and benefit."

We therefore hold that Gruelle shall have an accounting from the defendants for his profits and damages by reason of the infringement of the trade-marks by the defendants up to and including December 18, 1934.

We have carefully weighed the evidence supporting the respective positions of the appellant and the appellees in respect to the finding by the trial court that though Gruelle validly received the trade-marks by the assignment from Volland Company, he none the less abandoned them by reason of nonuser in an existing business. We feel constrained to accept the ruling of the learned District Judge in this respect. It is true that the only affirmative evidence of abandonment by Gruelle of the trade-mark "Raggedy Ann" lies in his license in May, 1935, to Exposition Doll & Toy Manufacturing Company to manufacture "Raggedy Ann" dolls in his design. It is also true that the record shows that Volland Company quit its manufacture of the dolls in 1934 because of limited market due to depression conditions. Gruelle, if he proceeded to undertake manufacture, faced not only depression conditions, but a raid by the defendants upon his market as well. The condition of the market was applied by the Supreme Court as one of the tests of abandonment in Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 632, 47 S.Ct. 481, 482, 71 L.Ed. 810, but it is a particularly striking feature of the bill of complaint that Gruelle in nowise alleges that he proposes to proceed with the manufacture of the dolls himself or that he has any existing business in respect to the manufacture of dolls. The appellant described his business as entertaining the public, "in which the good will or idea association value attaching to the characters 'Raggedy Ann' and 'Raggedy Andy' are the chief assets * * * Gruelle is therefore not only in the business of writing stories and drawing pictures, but also of exploiting the popularity or idea association value of his creative works in whatsoever form they may be embodied." We shall have more to say in respect to the nature of Gruelle's business upon the issue of unfair competition dealt with specifically hereafter, but the fact remains that trade-marks cannot be held in gross, and that there is nothing in the bill of complaint which tends to prove Gruelle's intention of himself using the trade-marks for the sale of dolls. We therefore hold that since Gruelle is not and never has been in the business of making and selling dolls and, in so far as the record shows, makes no statement that he intends to manufacture and sell dolls, that as a matter of fact and law he has abandoned the trade-mark. Imperial Cotto Sales Co. v. N. K. Fairbanks Co., 50 App.D.C. 250, 270 F. 686; Autoline Oil Co. v. Indian Refining Co., D.C., 3 F.2d 457; Corkran, Hill & Co. v. A. H. Kuhlemann Co., 136 Md. 525, 111 A. 471.

■ With regard to the issue of unfair competition, the dolls manufactured and sold by the appellee, Molly-'Es Doll Outfitters, Inc., possess a deceptively similar appearance to the dolls of Gruelle's books, cartoons and syndicated newspaper drawings. The rights of Gruelle, in so far as these books, cartoons and drawings are concerned, are in that field which also embraces the "Raggedy Ann" doll; the field of amusing children. "Raggedy Ann" is one in the public mind, whether she be personified by doll, cartoon, drawing, song, or book. The valuable good will which Gruelle has built up in this character of his creation is being appropriated by the defendants as a result of use of the tag "Raggedy Ann" upon the dolls of the defendants' design and manufacture. In the case of Patten v. Superior Talking Pictures, Inc., 8 F.Supp. 196, the District Court of the United States for the Southern District of New York restrained the

176

distribution and exhibition of motion pictures featuring a character "Frank Merriwell"; this character having originated in stories known as the "Frank Merriwell Stories," the work of the plaintiff. The District Court held that principles of unfair competition were applicable on the ground that the name "Frank Merriwell" had become associated in the public mind with the plaintiff's authorship, and was therefore identified with his work. We hold that this principle is applicable to the case sub judice where the defendants have appropriated the name of the appellant's character "Raggedy Ann," and therefore an injunction will issue against the use of the name "Raggedy Ann" by the appellees upon the dolls manufactured and sold by them.

The extension of the principles of unfair competition to situations wherein the goods manufactured by the plaintiff and defendant are not in direct competition on the market, but are in related fields, has frequently been treated and restraint issued by this court. Kotabs, Inc., v. Kotex Co., 3 Cir., 50 F.2d 810; Wall v. Rolls-Royce, 3 Cir., 4 F.2d 333; Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962.

The law of copyright is not invoked in the bill of complaint though Gruelle's cartoons and syndicated drawings are copyrighted and at least half the books in evidence in the case, written by Gruelle, though published by others, are copyrighted in his name. Had the appellant sued on copyright, the manufacture and sale by appellees of dolls deceptively similar to the dolls in appellant's copyrighted works might also have been restrained, Fleischer Studios v. Freundlich, Inc., Betty Boop, 2 Cir., 73 F.2d 276, but under the issues as herein framed we cannot hold that restraint should issue to the extent of preventing the appellees from selling dolls of an appearance deceptively similar to that of "Raggedy Ann." The relief sought in the Freundlich Case has not been invoked here.

In our opinion, the name "Raggedy Andy" is so closely related to the name "Raggedy Ann" that restraint to the same extent should issue against the use by the appellees of that name as well.

Other acts of unfair competition are alleged in the bill of complaint. For the sake of clarity we will enumerate them. They consist of the following:

First, the filing of an application in the Patent Office by the corporate appellee for the registration of the name "Raggedy Ann" as a trade-mark for dolls; second, the filing of a petition for cancellation of appellant's registration No. 107,328 for the name "Raggedy Ann" on dolls; third, representations to the trade that the appellees have registered the words "Raggedy Ann" and "Raggedy Andy" as trade-marks for dolls, and thus have the exclusive right to manufacture and sell them under these trade-marks; and, fourth, the intimidation of appellant's licensee, Exposition Doll & Toy Manufacturing Company, through threats of litigation. The appellees by these actions have sought exclusive rights in the trade-mark "Raggedy Ann" and in the design of the dolls manufactured by them. The same contention is instanced by their pending application in the Patent Office for the registration of the trade-mark "Raggedy Ann" and by the issued design patent No. 96,382 to Mrs. Goldman, and by the pending cancellation proceeding. We hold that the appellees have no such property right in the trade-marks "Raggedy Ann" or "Raggedy Andy" as to support either such application or petition for cancellation in view of the prior use of these trade-marks by the Volland Company and the further use of the trade-mark "Raggedy Ann" by Exposition Doll & Toy Manufacturing Company with Gruelle's permission. The further prosecution of such proceedings will be enjoined. The attempted intimidation by the appellees by threats of litigation to appellant's licensee, Exposition Doll & Toy Manufacturing Company, and to the trade, will likewise be enjoined.

Similar considerations compel the conclusion that design patent No. 96,382, issued to Mrs. Goldman, must be declared invalid for the reason that Mrs. Goldman was not, within the meaning of the patent statutes, the inventor of the design patented. Her design for the boy doll, "Raggedy Andy," is sufficiently close in characteristic appearance to Gruelle's design to make apparent the source of her inspiration.

An accounting should be had to compel restitution from the appellees to Gruelle for the damages which he has sustained in the premises.

This case is remanded to the court below for settlement of a decree in accordance with this opinion.