Colleen A. WILEY, d/b/a Wiley Creations, Plaintiff, Appellant,

v.

AMERICAN GREETINGS CORP., et al., Defendants, Appellees.

No. 84–1896.

United States Court of Appeals, First Circuit.

Argued March 4, 1985.

Decided May 13, 1985.

Paul J. Hayes, Boston, Mass., with whom Steven M. Bauer, New York City, and Weingarten, Schurgin, Gagnebin & Hayes, Boston, Mass., were on brief, for plaintiff, appellant.

Carol Simkin, New York City, with whom Robert J. Bernstein, Cowan, Liebowitz & Latman, P.C., New York City, William R. Hulbert, Gregory A. Madera and Fish & Richardson, Boston, Mass., were on brief, for American Greetings Corp., et al.

John L. Welch, Boston, Mass., with whom Wolf, Greenfield & Sacks, P.C., Boston, Mass., Melville Owen, Mary Rossman, and Owen, Wickersham & Erickson, P.C., San Francisco, Cal., were on brief, for R. Dakin & Co.

Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and Re,[*] Judge.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff Colleen Wiley, proprietor of Wiley Creations, appeals from a decision of the United States District Court for the District of Massachusetts denying her motion for summary judgment and allowing defendants' summary judgment motions. 597 F.Supp. 736.

Wiley contends that the district court erred when it "estopped" her from asserting the existence of any genuine issues of material fact because cross-motions for summary judgment had been filed. Wiley also claims that the district court erred when it determined that a solid red heart permanently affixed to the left breast of a teddy bear is not "inherently distinctive" and thus cannot be protected as a common law trademark under Massachusetts law absent proof of a secondary meaning. We hold that, although the district court misspoke concerning estoppel, it reached the right result since on no construction of this record could Wiley's alleged trademark be found "inherently distinctive" as a matter of law. We affirm the judgment of the district court.

Wiley owns and operates a small business, Wiley Creations, which manufactures and sells stuffed teddy bears ("Wiley Bears"). Wiley claims that in January 1980 she adopted as her trademark for the teddy bears the design of a red heart permanently affixed to the left breast of the bear. She asserts that defendants, all of whom are national manufacturers, licensors, or distributors of childrens' toys, began using her mark on their bears in 1983 without her permission. She therefore filed this action, alleging trademark infringement, unfair competition, and false designation of origin, and demanding a permanent injunction and damages.

Shortly after initiating discovery, all parties moved for summary judgment and submitted affidavits, declarations, and exhibits in support of their motions. The district court ruled that:

> All parties to this case have moved for summary judgment. All parties are thus estopped to assert any material issues of fact. The only question is whether the facts stated in the record with all possible inferences to be drawn therefrom would warrant a judgment for the plaintiff as a matter of law.

The court then ruled that Wiley's claim to a common law trademark failed because the mark was not "inherently distinctive" and had not become distinctive by acquiring a secondary meaning in the minds of consumers. Wiley does not contest the district court's conclusion that she did not show a secondary meaning, but she challenges its determination that the red heart sewn on her teddy bears was not "inherently distinctive."

Wiley is correct that cross-motions for summary judgment are not ordinarily to be treated as the equivalent of submission upon an agreed-upon record. Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the

---

[*] Chief Judge of the United States Court of International Trade, sitting by designation.

losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

*Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir.1968). *See also Redman v. Warrener*, 516 F.2d 766, 768 & n. 2 (1st Cir.1975); 6 J. Moore, *Moore's Federal Practice* ¶ 56.13 (2d ed. 1981) ("The well-settled rule is that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.")(footnotes omitted).

The court's misstatement does not, however, warrant a reversal in this case because the critical disputed issue—whether Wiley's alleged mark of a red heart affixed to her bear is "inherently distinctive"—is not capable of resolution in her favor.

 The "inherent distinctiveness" of Wiley's mark is critical because symbols and designs that are "inherently distinctive" can be protected as common law marks without the need for proof of secondary meaning, while symbols and designs that are not "distinctive" per se can only achieve trademark status upon proof, lacking here, of secondary meaning. J. McCarthy, *Trademarks and Unfair Competition* § 7:7, at 164 (1973). A design is considered "inherently distinctive" if it is fanciful[1] or arbitrary,[2] as opposed to descriptive[3] or generic.[4] *See, e.g., President and Trustees of Colby College v. Colby College-New Hampshire*, 508 F.2d 804, 807 (1st Cir.1975) ("While plaintiff's name is

not, strictly, a descriptive phrase of general usage, neither can it be termed fanciful, coined, or arbitrary in the same sense as Xerox or Kodak. In such circumstances, plaintiff has properly assumed the burden of showing not only likelihood of confusion between itself and defendant, but also that its name has acquired a secondary meaning associating plaintiff with its name in the minds of the consuming public.").

 Whether a design is "inherently distinctive," *i.e.*, whether it is arbitrary or merely descriptive, is ordinarily a question of fact, *see Brooks Shoe Manufacturing Co. v. Suave Shoe Corp.*, 716 F.2d 854, 857 (11th Cir.1983), that is decided by reference to the following factors:

whether [the design] was a "common" basic shape or design, whether it was unique or unusual in a particular field, whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as dress or ornamentation for the goods, or whether it was capable of creating a commercial impression distinct from the accompanying words.

*Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A.1977) (footnotes omitted). *See also Brooks Shoe*, 716 F.2d at 858. Evaluating the record here in the light most favorable to Wiley, however, leads us to conclude that no genuine issue exists for the trier of fact, since we see no proper basis on which a trier could determine that Wiley's heart is commensurate with the above standards.

 Wiley's red heart is a "common" basic shape, similar to a geometrical de-

---

**1.** A "fanciful" mark is a word or symbol "which is coined for the express purpose of functioning as a trademark ... [or] any obscure or archaic term not familiar to buyers." J. McCarthy, *Trademarks and Unfair Competition* § 11.2, at 346.

**2.** "Arbitrary" marks are "words, symbols, pictures, etc., which are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality, or characteristic of those goods or services." *Id.* § 11:4, at 350 (footnote omitted).

**3.** "A mark is 'descriptive' if it is descriptive of: the intended purpose, function or use of the goods; of the size of the goods, of the class of users of the goods, of a desirable characteristic of the goods, or of the end effect upon the user." *Id.* § 11:5, at 353 (footnotes omitted).

**4.** "[G]eneric designations tell the buyer what the product is, not where it came from." *Id.* § 12:2, at 406.

sign. It is hornbook law that "[o]rdinary geometric shapes such as circles, ovals, squares, etc., even when not used as background for other marks, are regarded as non-distinctive and protectable only upon proof of secondary meaning." McCarthy, *Trademarks and Unfair Competition,* § 7:12, at 172. *See In re Hillerich & Bradsby Co.,* 204 F.2d 287 (C.C.P.A.1953) (plain oval design on a baseball bat not "inherently distinctive"). A plain heart shape, like an "[o]rdinary geometric shape," carries no distinctive message of origin to the consumer, and could not carry such a message (absent establishment of a secondary meaning) given the heart shape's widespread use as decoration for any number of products put out by many different companies.

Using a red heart as ornamentation for stuffed animals is also far from unique or unusual. The record contains pictures of, and references to, an abundance of plush animals, including many teddy bears, that sport heart designs on their chests or other parts of their anatomy. *See Brooks,* 716 F.2d at 858 (Brook's "V" design on side of running shoe not unique or unusual in the field of running shoes given "dizzifying number of 'v's', 'flashes' and 'swooshes'" on running shoes); *Application of David Crystal, Inc.,* 296 F.2d 771, 773 (C.C.P.A. 1961) (stripes on top of men's socks not "inherently distinctive" in part because common; "unless [an ornamental] design is of such nature that its distinctiveness is obvious, convincing evidence must be forthcoming to prove that in fact the purchasing public does recognize the design as a trademark which identifies the source of the goods") (citation omitted). Moreover, the design was not recently discovered by toy manufacturers; many of these plush animals were available to the public before 1980, the year of Wiley's first use. Indeed, the record indicates that an "Emile Bearhart," a "Bearhart Fun Pom," and a teddy bear put out by American Greetings Corp., bearing red hearts, were available to the public before 1980.

The fact that Wiley's alleged mark is a *red* heart, *permanently* affixed to the *left* breast of a *teddy bear* does not, as she claims, serve to distinguish her use of the design from others' uses of hearts on other stuffed animals. These characteristics, even if they in combination could be deemed unique, are "mere refinement[s] of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as dress or ornamentation for the goods." *Seabrook Foods,* 568 F.2d at 1344. Again, the record contains so many examples of use of a red heart motif on teddy bears and other stuffed animals, not to mention all manner of other toys and paraphernalia, that no reasonable argument on this point can be made.

In sum, a reasonable jury could not find for Wiley on any of the *Seabrook* factors for determining whether a mark is "inherently distinctive." Indeed, it is hard to conceive that anyone would view a red heart, universally regarded as denoting love and affection and occupying its usual anatomical position, as an "inherently distinctive" mark, *i.e.,* as an arbitrary symbol of origin rather than an ornament descriptive of a quality or characteristic of the toy. *See* notes 2–3, *supra.*

*Affirmed.*