**Francisco AVILES MARTINEZ, et al., Plaintiffs,**

v.

**Guillermo JIMENEZ MONROIG, et al., Defendants.**

Civ. No. 87–1387 (JP).

United States District Court, D. Puerto Rico.

May 28, 1991.

Frank Rodríguez García, Ponce, P.R., for plaintiffs.

Pedro A. Del Valle Ferrer, Dept. of Justice of P.R., San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it the parties cross-motions for summary judgment. This is a civil rights action for damages and injunctive relief based upon claims of political discrimination. Federal jurisdiction is invoked pursuant to 42 U.S.C. § 1983. Both plaintiffs further invoke this Court's pendent jurisdiction over alleged violations of Puerto Rico's Constitution and local statutes.

Plaintiffs, both members of Puerto Rico's New Progressive Party (the "PNP")[1], claim that they have been subjected to political persecution at their place of employment, the Ponce office of the Automobile Accident Compensation Administration ("AACA") by defendants Guillermo Jiménez Monroig (the Ponce Regional Manager of AACA and the plaintiffs' immediate supervisor), and Carmen Rivera Vázquez (Deputy Executive Director of AACA) (both members of Puerto Rico's Popular Democratic Party "PDP"), on account of their political affiliation. Plaintiff Francisco Avilés Martínez, at all times relevant to this case, has and continues to be the Deputy Manager of the Ponce AACA office. For the reasons stated herein the defendants' Motion for Summary Judgment must be granted, and the plaintiffs'

1. PNP is the Spanish acronym for the New Progressive Party.

Motion for Summary Judgment must be denied.

## I. THE FACTS

Avilés specifically details instances where defendant Jiménez was allegedly responsible for the following harassment: his telephone was disconnected; his desk was taken away; he was relieved of some of his duties as Deputy Manager; he was assigned menial tasks; he was assigned overly burdensome tasks; he was not invited to a number of office meetings; he was excluded from some office training sessions; and he was prohibited from receiving outside calls. Avilés seeks compensatory damages for the political harassment the defendants allegedly engaged in, and injunctive relief to enjoin the defendants from continuing to engage in such persecution.

Plaintiff Manuel A. Flores Colón claims that the defendants' pattern of political discrimination resulted in a constructive discharge from his position as Supervisor of the Ponce Office. Flores contends that the following behavior is equivalent to a constructive discharge: defendant Jiménez replaced his desk with a smaller desk; Jiménez placed his belongings in a cardboard box; Jiménez subjected him to ridicule on a daily basis which led to an emotional crisis which prevented him from working; defendant Rivera granted him a six-month leave of absence without pay because of his mental disturbance, but the leave was not extended for an additional six months as the plaintiff requested; defendant Rivera then gave Flores the option of returning to the same working conditions immediately or being terminated unfavorably; the plaintiff then chose to resign under force. Flores requests reinstatement, backpay and compensatory damages.

The defendants Guillermo Jiménez Monroig (the Ponce Regional Manager of AACA and the plaintiffs' immediate supervisor) and Carmen M. Rivera Vázquez (Deputy Executive Director of AACA) allege that the plaintiffs fail to state a claim upon which relief can be granted; that they did not discriminate against the plaintiffs based upon their political affiliation; and that in addition they are released from liability based upon the qualified immunity doctrine.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

A motion for summary judgment is appropriate when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *see e.g., Medina–Muñoz v. R.J. Reynolds*, 896 F.2d 5 (1st Cir.1990). A "genuine" issue is one that is dispositive, and must therefore be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact is one which affects the outcome of the suit and must be resolved before attending to related legal issues. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d at 181.

Essentially, Rule 56(e) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the burden is first on the movant, to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2554. Thereafter, the burden shifts to the nonmovant to establish the existence of a genuine material issue. *Brennan v. Hendrigan*, 888 F.2d at 191. The nonmovant, however, cannot rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56.

Although the parties in this case have filed cross-motions for summary judgment

on the issue of liability,[2] such motions "are not ordinarily to be treated as the equivalent of submission upon an agreed-upon record." *Wiley v. American Greetings Corp.*, 762 F.2d 139, 140 (1st Cir.1985). Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

*Id.* at 140–41 (citation omitted). In the instant case, there are no genuine issues of material fact which require a plenary trial. An application of the law of political discrimination mandates that the defendants' Motion for Summary Judgment be granted as it pertains to Avilés, and that the plaintiffs' Motion for Summary Judgment be denied with regard to Avilés' claims.

## III. THE QUALIFIED IMMUNITY DOCTRINE

■ The doctrine of qualified immunity insulates government actors in their exercise of discretionary powers, from civil liability insofar as their conduct does not abridge clearly established federal rights about which a reasonably prudent official should have been aware. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

> The qualified immunity inquiry logically begins with identification of the right at issue and proceeds to place that right in historical perspective. If the right allegedly violated was "clearly established" when the challenged conduct took place,

then the defendants should reasonably have been cognizant of it. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. In this context, the phrase "clearly established" has a special condition: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

*Amsden v. Morán*, 904 F.2d 748, 752 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). It is important to note that the qualified immunity doctrine only insulates government officials from civil liability, not injunctive relief. "Hence, defendants' right to summary judgment on the *injunction* demand depends upon what [the substantive] law *really* (and currently) is, not upon what the defendants might then reasonably have thought it." *Newman v. Burgin*, 930 F.2d 955, 957 (1st Cir.1991).

■ It is now clearly established that, except in situations where political orientation may be a constitutionally appropriate criterion for employment decision making, it is an impermissible infringement on employees' First Amendment rights to base promotions, transfers and lesser acts of retaliation upon an employee's political affiliation. *Rutan v. Republican Party of Illinois*, —— U.S. ——, —— n. 8, 110 S.Ct. 2729, 2737 n. 8, 111 L.Ed.2d 52, 67 n. 8 (1990) (express extension of the *Elrod–Branti*[3] rule to promotion, transfer, recall, hiring decisions and patronage practices that would lead a reasonable person to resign). The First Circuit has unequivocally stated that it was unclear in the 1985–1989 time frame that the Constitution prohibited politically motivated demotions, and hence other patronage practices short of actual dismissal. *Roque–Rodríguez v. Moya*, 926 F.2d 103, 108 (1st Cir.1991).

---

**2.** At the Pretrial Conference of September 8, 1988, the parties expressly agreed to submit this case for resolution based upon their cross-motions for summary judgment.

**3.** *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S.

507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) stand for the proposition that the patronage practice of discharging public employees on the basis of their political affiliation violates the First Amendment.

The instant case was filed on October 14, 1987, with allegations of political discrimination originating in 1986 when defendant Jiménez commenced his employment as AACA's Ponce Regional Manager. As the challenged patronage practices were not clearly established as violations of federal law when the conduct was allegedly committed, the doctrine of qualified immunity insulates the defendants from civil liability.

■ The defendants are also immune from plaintiff Flores' request for a back pay award. *Lenea v. Lane,* 882 F.2d 1171, 1179 (7th Cir.1989) explains that qualified immunity bars the award of back pay relief because "[r]egardless of what label is placed on the monetary relief which Lenea [the plaintiff] wants, 'equitable' or 'legal damages,' it remains a personal monetary award out of the official's own pocket." The rationale for according government officials qualified immunity is two-fold: 1) to keep a fear of the threat of personal liability from deterring individuals from seeking employment in the public sector; and 2) to avoid the chilling effect on the exercise if the government official's decision-making responsibility. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Owen v. City of Independence,* 445 U.S. 622, 655, 100 S.Ct. 1398, 1417–18, 63 L.Ed.2d 673 (1980). *Cf. Santiago–Negrón v. Castro Dávila,* 865 F.2d 431 (1st Cir.1989) (back pay can be considered an item of compensatory damages). Furthermore, an award of back pay would be a monetary award against the government officials in their official capacities. The back pay award would in effect be a monetary claim against a department of the government of the Commonwealth of Puerto Rico, and thus in violation of the Eleventh Amendment. *Batistini v. Aquino,* 890 F.2d 535, 536 (1st Cir.1989). Therefore the Court is compelled to grant the defendants' Motion for Summary Judgment in part with respect to the plaintiffs' request for monetary relief.

## IV. POLITICAL DISCRIMINATION STANDARD

■ The defendants contend that the plaintiffs do not have cognizable claims under 42 U.S.C. § 1983 because actions short of dismissal do not rise to the level of constitutional violation. Yet, *Rutan v. Republican Party of Illinois,* —— U.S. ——, —— n. 8, 110 S.Ct. 2729, 2737 n. 8, 111 L.Ed.2d 52, 67 n. 8 (1990) (citation omitted), unequivocally extends § 1983 protection to "even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her free speech rights." In addition, the First Circuit in *Núñez–Soto v. Alvarado,* 918 F.2d 1029 (1st Cir.1990) recognized a § 1983 claim for an employee that alleged she had been constructively discharged because of her political affiliation. Therefore, the plaintiffs in this case do have cognizable § 1983 causes of action for their claims of harassment and constructive discharge.

In order to assert a claim of political discrimination with regard to an employer's hiring decisions, the plaintiffs bear the initial burden of showing that political discrimination was the "substantial or motivating factor" for the employer's action. After bearing this initial burden, the defendants may show by a preponderance of the evidence that they would have made the same decisions even in absence of the protected conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). After the defendants have introduced evidence to sustain their *Mt. Healthy* defense, the plaintiffs will still prevail if it is found that they would not have received the [same] treatment *but for* their political affiliation. *Acosta–Sepúlveda v. Hernández–Purcell,* 889 F.2d 9, 13 (1st Cir.1989). Thus in order to merit an entry of summary judgment, the plaintiffs must demonstrate that there is no question of material fact at issue in the burden shifting involved in a political discrimination case.

■ In the instant case, plaintiff Avilés has failed to sustain the initial burden of demonstrating that the political discrimination was the motivating factor in the defendants' employment decisions. "Merely jux-

taposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 58 (1st Cir.1990); *Kauffman v. P.R. Telephone Co.*, 841 F.2d 1169, 1172 (1st Cir.1988) (to establish prima facie case of political discrimination, must show that political affiliation was substantial or motivating factor in employment decision, mere conclusory statements insufficient). Rather, the plaintiff must make a fact-specific showing that a causal connection exists between the adverse treatment and the plaintiff's political affiliation. *Id.* at 58; *Carrasquillo v. Aponte Roque*, 682 F.Supp. 137, 141 (D.P.R.1988).

Imprudently, plaintiff Avilés fails to present any evidence which surpasses the mere juxtaposition of conduct with political affiliation. The one paragraph of plaintiffs' Motion for Summary Judgment (at page 39) which addresses the issue of political motivation relies upon defendant Rivera's deposition testimony, wherein she states that the reason Avilés was not put in charge of the Ponce office when Jiménez was not available, was because the position of Regional Manager is a position of trust and confidence which required a member of the PDP. Rivera Deposition at 66 & 68. Rivera's deposition testimony refers to AACA policy reasons for having a trusted person assume the Regional Director's position on an interim basis. Rivera Deposition at 31. The *Elrod–Branti* cases established that party affiliation may be an appropriate requirement for positions categorized as confidential. *Agosto–De–Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1216 n. 5 (1st Cir.1989) (public employee whose job functions remain largely the same, but who is excluded from policymaking sessions that he once attended, may not maintain First Amendment claim, even if change is politically motivated). The Rivera statements which the plaintiff points to, clearly do not reveal the rationale for why Jiménez allegedly reduced many of Avilés' duties, and he was continually ha-

rassed and overworked by Jiménez. Nevertheless, the plaintiff submits no other evidence for his speculation of politically motivated conduct.

██ Furthermore, Avilés' deposition demonstrates that the plaintiff alleged a pattern of harassment against all managerial employees because they were members of the PNP, yet the plaintiff did not know the political affiliation of all the managerial employees. Avilés Deposition at 44. When asked why the defendants had allegedly instituted a pattern of harassment, the plaintiff's only response was that defendant Jiménez was an active member of the PDP. Avilés Deposition at 41. Defendant Jiménez never told plaintiff Avilés that he was out to get him because he was a member of the PNP. Avilés Deposition at 64. Moreover, the plaintiff states that defendant Jiménez had a reputation for being a difficult person to work with, and had problems with many people at the Ponce office. Avilés Deposition at 68–69. In fact, union members of diverse political affiliations joined in a protest against Jiménez. Avilés Deposition at 70. Plaintiff Avilés has shown that Jiménez was a poor manager that generally accorded his employees rude treatment, but the plaintiff has failed to enumerate a single instance where Jiménez's conduct towards him was causally connected to the plaintiff's political affiliation. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), provide that summary judgment should be entered against a party bearing the burden of proof on an issue at trial who fails to establish that there exists a genuine and material factual dispute about that issue. Thus plaintiff Avilés' failure to bear the initial burden of demonstrating a political animus, compels the Court to deny the plaintiffs' Motion for Summary Judgment, and to grant the defendants' Motion for Summary Judgment in that plaintiff Avilés has failed to state a claim upon which relief can be granted.[4] *Correa–Martínez* 903

4. Alternatively, even if the plaintiff has success-

fully borne its initial burden, the defendants

F.2d at 58; *Cf. Agosto–De–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1220 n. 9 (1st Cir.1989). Furthermore, the Court in a nondiversity case such as this must have the presence of at least one "substantial" federal claim in the lawsuit in order to hear and determine pendent state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As the Court must enter judgment against plaintiff Avilés' federal claim, we no longer have the power to adjudicate his pendent state claims. Therefore, the Court in its discretion must dismiss Avilés' pendent state law claims. *Newman v. Burgin,* 930 F.2d at 963–64 (D.P.R.1991).

In contrast to plaintiff Avilés, plaintiff Flores has raised an issue of genuine material fact as to the existence of political animus in his case. Plaintiff Flores makes specific reference to a conversation he had with defendant Jiménez, where Flores asked him why Jiménez has so many differences of opinion with him. Flores claims that Jiménez responded by questioning him about his meeting with a PNP officer (PNP Resident Commissioner) Baltasar Corrada Del Rio. When Flores asked what that had to do with his job, Jiménez allegedly stated "I know you met with him, where you met with him, and even the topic you discussed," "I know all your moves," "I have good contacts inside your party." Flores Deposition at 29–30. Such comments could very well be construed as a demonstration of Jiménez's political animus, and Flores has therefore complied with his initial burden. Defendant Jiménez himself concedes that he had a political conversation with Flores. Jiménez Deposition at 45. But Jiménez characterizes the conversation as Flores spontaneously making comments about politics. Thus, Flores has successfully sustained the initial burden by detailing the political conversation with Jiménez and submitting the deposition of coworker Luz Aida Ramírez, wherein she states that

Jiménez had once commented that if Flores returned to AACA after his leave of absence, he would *make him leave.* Ramírez Deposition at 14.

## V. CONSTRUCTIVE DISCHARGE STANDARD

 The defendants maintain that even if plaintiff Flores is successful at demonstrating the possibility of a political animus, summary judgment must still be entered in defendants' favor because plaintiff Flores was not constructively discharged. The standard for a constructive discharge was initially articulated in the First Circuit case of *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114 (1st Cir. 1977). A trier of fact must be satisfied that new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Id.* at 119. The Court must consider such factors as how humiliated the plaintiff was made to feel and how demeaned he was. *Id.* at 120 n. 4. In order to classify as a constructive discharge, the "burden imposed upon the employee must cause, and be intended to cause, a change in his working conditions so difficult or unpleasant to force him to resign." *Id.* at 114 (citation omitted). *Accord Núñez–Soto v. Alvarado,* 918 F.2d 1029, 1030 (1st Cir.1990); *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559 (1st Cir.1986). Thus the Court must apply this objective test for constructive discharge, and consider whether the factual allegations and evidence brought forth by the plaintiff, presents a constructive discharge as a matter of law. *Marley v. United Parcel Service, Inc.,* 665 F.Supp. 119, 129 (D.R.I.1987) (constructive discharge objective test standard); *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559 (1st Cir. 1986) (court analysis of constructive discharge factual allegations).

---

have successfully mounted a *Mt. Healthy* defense of indicating that the same actions would have been taken absent a difference in political affiliation—which the plaintiff has not called into question. Specifically, the defendant demonstrates that the plaintiff's cubicle space along with other cubicle space was converted into an

enclosed office for Jiménez as the new Ponce Regional Manager, as there were no enclosed offices at the Ponce AACA facility. When Avilés' desk was removed from the cubicle space, Avilés' telephone was inadvertently disconnected, but later reinstalled by the telephone company. Jiménez Deposition at 61–63.

 In the instant case, plaintiff Flores enumerates instances where: Jiménez replaced his desk with a smaller desk (Pretrial Order (PTO) uncontested fact # 11); Jiménez had his belongings placed in a cardboard box (Gilberto Rivera Torres Deposition at 9); Jiménez ordered that his files be switched, hindering Flores' ability to work (Jesús Caldera Deposition at 12); Jiménez subjected him to ridicule on a daily basis; and the constant humiliation led to an emotional crisis. The daily ridicule is exemplified by the public scolding which coworker Jesús Caldera witnessed in which Jiménez reduced Flores to tears. Caldera Deposition at 13. Dr. Báez recommended that Flores obtain a one year leave of absence from work, because his condition of depression and prescribed medications would affect his memory and ability to perform on the job. Defendant's Summary Judgment Exhibit D2. Plaintiff Flores requested a one year leave of absence. Defendant Rivera granted Flores a six month leave of absence without pay. PTO uncontested fact # 13. Towards the end of Flores' leave of absence, Dr. Báez recommended that he obtain another six month leave of absence for his depression. Defendants' Motion for Summary Judgment Exhibit H2. When Flores requested an additional six month leave of absence, it was denied and he was ordered to return to work. PTO uncontested fact # 15. The defendants assert that Flores was ordered to return to work because of workplace necessity and because they discovered that he was employed elsewhere during the six month leave of absence he had been granted.[5] Defendant's Summary Motion Exhibit F, (Rivera letter denying leave request). Given the choices the plaintiff was offered (unfavorable termination or a return to a stressful and politically harassing work environment), the Court finds that Flores was constructively discharged from his job. "For anyone with some self-respect the position that [the defendants] placed [Flores] in was intolerable; even if his health had not collapsed under the strain, he would have had to quit. The responsibility for his leaving was thus the defendants'." *Parrett v. City of Connersville, Ind.*, 737 F.2d 690, 694 (7th Cir.1984) (enforced idleness is a constructive discharge).

 But the Court's inquiry does not end here. The defendants have mounted a *Mt. Healthy* defense to the plaintiff's assertion of a politically motivated constructive discharge. Particularly, the defendants present evidence which demonstrates that they would have made the same employment decisions "even in absence of the protected conduct." It was in defendant Rivera's discretion to grant or deny Flores' requests for leave of absence without pay. Rivera Deposition at 48. Even though Rivera received Flores' health certificate which stated he could not work because of the stress of political discrimination, she decided to deny his request because:

He sent this [health certificate], but after this letter I had been informed from an employee of the insurance company that he was working someplace else. And he said that the medication had been effecting his memory in the other letter [first request for leave of absence].

And it didn't mention anything about the persecution by Mr. Jiménez.

It is very interesting that in the first certificate it was said that he could not work, that he had to be out of work. And I'm informed that, yes, he's working someplace else. And his services were needed in that area. So, when he requested that additional six months, we wanted him to come back to his area.

Rivera Deposition at 59. The defendants' position is further supported by the testimony that: "[m]y worry was that we needed his services and if he was working someplace else, he could work for me." Rivera Deposition at 60. Therefore, regardless of the defendant Flores' political affiliation, plaintiff Rivera denied the leave request

---

5. Flores' employment as an insurance adjuster with the Universal Insurance Company (Defendant Exhibit E), is not a bar to a finding of constructive discharge, because "a wrongfully discharged employee must use 'honest, earnest and intelligent efforts' to mitigate his losses...." *Alicea Rosado*, 562 F.2d at 119 (citation omitted).

because she needed Flores' services and had been informed that he was capable of working. Such a rationale for denial of a leave request is completely legitimate given the employer's needs to have its offices run efficiently.

As the defendant has presented a viable *Mt. Healthy* defense, the burden shifts back to the plaintiff to show that the challenged employment decision would not have been made *but for* his political affiliation. The plaintiff has failed to maintain this final burden. All its submitted pleadings focus upon the rude treatment Flores was accorded by Jiménez, but neglects to articulate in what way Rivera's employment decision was based upon the plaintiff's political affiliation. This omission is detrimental to the plaintiff's presentation of Rivera's employment decision as the crux of the plaintiff's constructive discharge case. It was not until Rivera denied the plaintiff's second request for a leave of absence, that he considered himself to be constructively discharged. "Rivera denied plaintiff's request so he had no other alternative but to resign to his position, *which is in effect a constructive discharge.*" Plaintiffs' Complaint at 14 (emphasis added). Therefore, plaintiff Flores has failed to sustain his final burden of demonstrating that Rivera's employment decision would not have been made but for his political affiliation, and plaintiff's Motion for Summary Judgment must be denied. As the plaintiff's failure to sustain each of the required *Mt. Healthy* burdens, is a failure to state a claim for political discrimination, the defendants' Motion for Summary Judgment must be granted. In addition, the entry of summary judgment in favor of the defendants, necessitates the dismissal of Flores' pendent state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

## VI. CONCLUSION

Summary judgment must always be entered against a party bearing the burden of proof on an issue at trial, who fails to establish that there exists a genuine and material factual dispute about that issue.

In order to establish a claim of political discrimination under 42 U.S.C. § 1983, the plaintiffs bear a number of burdens of proof. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Plaintiff Avilés fails to establish that there is a factual dispute that political discrimination was the substantial and motivating factor for the defendants' actions. Plaintiff Flores fails to establish that there is a factual dispute that he would not have been constructively discharged but for his political affiliation. Wherefore, in view of the foregoing the plaintiffs' Motion for Summary Judgment is hereby DENIED and the defendants' Motion for Summary Judgment is GRANTED. The plaintiffs' pendent state claims are hereby DISMISSED.

IT IS SO ORDERED.