## LIFE SAVERS CORPORATION v. CURTISS CANDY CO.

### No. 9967.

United States Court of Appeals Seventh Circuit.

May 23, 1950.

William T. Woodson, Beverly W. Pattishall, Lewis S. Garner, all of Chicago, Ill., James F. Hoge, Lenore B. Stoughton, New York City, of counsel, for appellant.

Casper W. Ooms, Chicago, Ill., Edwin F. Zukowski, Chicago, Ill., Walker, Atwood, Zukowski & McFarland, Chicago, Ill., of counsel, for appellee.

Before D U F F Y, L I N D L E Y and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

This is an action for trade-mark infringement and unfair competition. On March 8, 1938, plaintiff registered under the Act of February 20, 1905, 33 Stat. 724, a distinctive mark (No. 355,158) consisting of a striped background across which the words, "Life Savers," were printed three times, one above the other, in white letters. Immediately above each printing of "Life Savers," the words "Five Flavor," were printed in black letters. The registration stated, "The drawing is lined to indicate the colors red, yellow, green, orange, and purple."

Both plaintiff and defendant manufacture and market hard candy discs of various colors and flavors in cylindrical-shaped packages or rolls about 2¾ inches in length and ¾ of an inch in diameter. Each package or roll bears an identifying label and contains eleven candy discs.

Among the different flavored candy discs produced by plaintiff are those of various fruit flavors, the package of each kind bearing a wrapper the background of which has an appropriate identifying color, and on which the words, "Life Savers," are printed. Plaintiff's candy discs have a hole in the center, and Plaintiff has widely advertised its products as "The Candy with a Hole." Defendant's discs do not have a hole, but the wrappers for its various fruit-

flavored discs likewise have a background of an appropriate identifying color. To illustrate: plaintiff and defendant market lime flavored candy discs in wrappers with a green background, lemon flavored discs in wrappers with a yellow background, wild cherry flavored discs in wrappers with a red background, and orange flavored discs in wrappers with an orange background.

On each of plaintiff's wrappers the words, "Life Savers," appear three times in easily read letters extending practically the entire length of the package. Above the words, "Life Savers," appears the designation of the flavor of the candy contained in that package. Very little of plaintiff's wrappers is not covered with printing.

Defendant's fruit-flavored candy discs are marketed in wrappers plainly marked to indicate defendant's name and the flavor of the candy, such as "Curtiss Lime Drops," "Curtiss Orange Drops," "Curtiss Lemon Drops," and "Curtis Wild Cherry Fruit Drops." These words are printed in easily read white letters on a background which is a square of blue extending half the width and half the length of the label, each blue square being staggered diagonal to the other, and they thus occupy half of the face of the wrapper. They are so located that at least one of them is clearly visible, no matter in what position the roll of candy may be placed. Where the corners of the two blue squares would meet in the center of each wrapper (irrespective of the color of the background of the other portion of the label), the letter "C" in white is printed on a red background $\frac{1}{4}$ inch wide and $\frac{7}{16}$ inch high. The portion of the background not covered with the two blue fields and the small red center between consists of parallel stripes of solid color, such as green for the lime flavor, yellow for the lemon flavor, and which are designed to simulate the appearance of the candy discs contained therein. No printing appears on the striped background.

Both plaintiff and defendant also produce and market packages of assorted fruit-flavored candy discs. The only complaint made by the plaintiff in this action concerns the wrappers used by the defendant on its assorted fruit-flavored drops. The background of plaintiff's wrapper for its packages containing assorted fruit-flavored candy is nine parallel red, yellow, green, orange and purple stripes, across which the words, "Life Savers," appear three times entirely across the wrapper, in the manner hereinbefore indicated, and the words, "Five Flavor," appear in smaller but easily read letters. The background of defendant's wrapper for its packages of assorted fruit-flavored candy (other than the two blue fields and small red square) is eleven red, orange, yellow and green stripes of exactly the same width and appearance as the stripes on defendant's other packages containing lime, orange, lemon or wild cherry fruit drops. The stripes are so designed that they give the impression that the multicolored candy discs inside the package can be seen through a transparent wrapper. No words are printed across the colored striped background.

Plaintiff brings this action to permanently enjoin the defendant from using the label now used by it on its wrappers for its "Curtiss Assorted Drops," claiming that as plaintiff was the first in the field, the colored striped background of the label on defendant's wrapper infringes plaintiff's registered trade-mark No. 355,158, and competes unfairly with plaintiff. The district court held that plaintiff's trade-mark was not infringed, and found that the defendant had taken every reasonable means to prevent confusion of goods. From a judgment dismissing the complaint plaintiff brings this appeal.

Counsel for both sides requested the trial judge to enter findings of fact and conclusions of law, but he refused to do so. He did file a "memorandum opinion," in which he found certain facts and drew certain conclusions; but it falls short of the findings of fact and conclusions of law contemplated by the Federal Rules of Civil Procedure, 28 U.S.C.A. True it is that Rule 52(a) provides, " * * * If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. * * *" But this provision does not relieve the trial judge of making adequate

findings. It only relieves him from doing what some courts had ruled was a requirement, that is, filing findings of fact and conclusions of law separate from the opinion. Of course, a judge need only make brief, definite and pertinent findings of fact and conclusions of law. Findings in elaborate detail are as much to be avoided as the long argumentative findings and conclusions often presented by counsel for a successful litigant. However, the findings and conclusions should adequately cover the contested issues. In the case at bar we have nevertheless decided not to send the case back to the trial court so that additional findings could be filed as we have concluded that, based upon the facts which were mentioned in the court's opinion, the decision of the district court was correct.

The public demand for hard candy discs is and has been widespread. Over a billion packages of plaintiff's assorted fruit flavored candy discs were sold in fourteen years. Both plaintiff and defendant furnished display cabinets or racks of various sizes and shapes to storekeepers and dealers for the purpose of displaying their various rolls of candy. One type, received in evidence, known as a tier-drop rack, was made of plastic and paper board, and was furnished by defendant to over 142,000 dealers, to display its line of gum and fruit-flavored drops, including its packages of assorted drops. The name, "Curtiss," appears on the top of this rack in large block letters approximately 1¼" in height and width and in four other prominent places on the rack.

Surveys have shown that about 85% of the purchases of candy discs result from impulse buying, as distinguished from premeditated buying. Most purchasers of such products serve themselves from counters where displays of fruit drops, candy discs and other candies and gum are displayed.

As a general practice of the trade, manufacturers of hard candy discs use labels with multi-colored background for their assorted flavored discs, and labels with single-colored background for their packages containing one flavor of candy discs. Two manufacturers who market assorted colored discs in one package call their prod-

ucts "Sherbits" and "Luxury" respectively. In these the multi-colored striped backgrounds run crosswise, similar to the labels on packages containing plaintiff's and defendant's assorted discs. The labels on packages of assorted drops of other manufacturers, as "Smiles," "Gems," and "Kens," have a background of multi-colored stripes, but such stripes run spirally. The product, "Charms," is a package of small square hard candy tablets, which come in various flavors, such as lemon, orange, lime, strawberry, raspberry, and grape, each package bearing a label with a colored background corresponding to the flavor. For their package containing an assortment of flavors, a label is used which has a multi-colored striped background with the stripes running crosswise like those on the packages of plaintiff and of defendant.

The evidence discloses that in the competitive field in which the plaintiff and defendant market their products the use of color, including colored stripes, as the background on labels is functional and indicates what color and flavor of candy the package contains. This is especially true as to the candy discs of the various fruit flavors. The color of the background is in fact descriptive and serves as a ready identification of the flavor of the candy in the package. The use of a combination of colored stripes as a background indicates to the consumer that the package contains an assortment of candy discs or tablets of various colors and flavors. It has long been common practice in the packaging art for the label of a package, can, or other container, to show a colored replica of the contents.

■ The function of a trade-mark is to indicate the origin of the article to which such mark is applied. It may consist of any symbol, emblem, device or words, but its office is to point out distinctly the origin of the article to which it is applied. The dominant feature of plaintiff's trade-mark is the words, "Life Savers," appearing three times in bold white letters extending practically the length of its label. It would indeed seem unlikely for any purchaser buying a package of "Life Savers" to avoid knowledge of the origin of the package of

Life Savers. The same is likewise true as to any of defendant's packages of hard candy discs.

Nevertheless, plaintiff did produce witnesses who testified as to confusion of goods, stating that at a certain time or times they had picked up a package of Curtiss mints when they wanted a package of Life Savers, and in some instances that a merchant had handed out a Curtiss product when they had asked for Life Savers Assorted Mints. However, considering that annually more than 70,000,000 rolls of plaintiff's Life Savers Assorted Mints are sold, to say nothing of many millions of packages of other flavors, usually a single package at a time and to impulse buyers, it would be extraordinary if some confusion could not be found irrespective of the details of the dress of the package. As the trial court said, " * * * It is just as probable that the confusion can be attributed to the size and shapes of the various packages as to the exact wording and coloring of the labels. * * *" Furthermore, some of plaintiff's witnesses indicated that the words, "Life Savers," had to them become generic for small disc candies and they used the words to describe the type of merchandise. The trial court made no finding on this point, and it is here mentioned only to demonstrate that answers to plaintiff's questions as to confusion would have no weight if the words, "Life Savers," meant to such witnesses any small disc candy, irrespective of origin.

■ A number of witnesses for plaintiff admitted on cross-examination that the colored stripes on the background of the labels indicated to them an assortment of candy, in other words, indicated the contents of the package. Further confusion as to what witnesses meant by their answers was caused by the fact that plaintiff prepared for the purpose of the trial of this case a package with a label containing only colored stripes and no printing whatsoever, and referred to it in questioning witnesses when taking their deposition. Plaintiff had never used such a package commercially, and the trial court very properly refused to admit that package of candy discs into evidence.

■ A new competitor is not held to the obligations of an insurer against all possible confusion. He is not obligated to protect the negligent and inattentive purchaser from confusion resulting from indifference. Skinner Mfg. Co. v. General Foods Sales Co., Inc., D.C., 52 F.Supp. 432, 433, 450. It has been said that he is not required to make the market "foolproof." Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 119, 59 S.Ct. 109, 83 L.Ed. 73; Quaker Oats Co. v. General Mills, Inc., 7 Cir., 134 F.2d 429, 432; John Morrell and Co. v. Doyle, 7 Cir., 97 F.2d 232, 237, certiorari denied 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 415. In Fruit Growers Co-Op. v. M. W. Miller & Co. et al., 7 Cir., 170 F.2d 834, at page 837, this court said: " * * * Instead, they are required only to mark or designate them in such manner that purchasers exercising ordinary care to discover whose products they are buying will know the truth and not become confused or mistaken. * * *"

This opinion quotes from Allen B. Wrisley Co. v. Iowa Soap Co. et al., 8 Cir., 122 F. 796, 798: " * * * The duty is imposed upon every manufacturer or vendor to so distinguish the article he makes or the goods he sells from those of his rival that neither its name nor its dress will probably deceive the public or mislead the common buyer. He is not, however, required to insure to the negligent or the indifferent a knowledge of the manufacturer or the ownership of the articles he presents. * * * One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition. (Citing)"

Plaintiff's objection to the use by defendant of a multi-colored striped background goes beyond the use of any one particular pattern or sequence of colors. It would deny the use by defendant and others of any sequence of colored stripes in those colors which it has used on its labels on rolls con-

taining a variety of fruit-flavored hard candy discs.

■ "That a man cannot acquire a trademark by color alone has been stated a good many times in decisions and textbooks." Campbell Soup Co. et al. v. Armour & Co., 3 Cir., 175 F.2d 795, 798. As a rule color cannot be monopolized to distinguish a product. Diamond Match Co. v. Saginaw Match Co., 6 Cir., 142 F. 727, 729, certiorari denied 203 U.S. 589, 27 S.Ct. 776, 51 L.Ed. 330. Color is not subject to trade-mark monopoly except in connection with some definite arbitrary symbol or design. James Heddon's Sons v. Millsite Steel & Wire Works, Inc., 6 Cir., 128 F.2d 6, 9. In the Campbell Soup Co. case, supra, the court said, 175 F.2d at page 798: "What the plaintiffs are really asking for, then, is a right to the exclusive use of labels which are half red and half white for food products. If they may thus monopolize red in all of its shades the next manufacturer may monopolize orange in all of its shades and the next yellow in the same way. Obviously, the list of colors will soon run out."

■ The validity of plaintiff's trademark in its entirety is not seriously questioned. But it does not follow that plaintiff may dissect its mark and claim a monopoly on a multi-colored striped background where such background is in fact descriptive of the contents of the package on which such a label is used.

In the Heddon case, supra, the court said, 128 F.2d at page 8: "Appellant's mark was arranged in composite form and as such constituted a symbol. Under such circumstances, it must be considered in its entirety, not separating the respective words from each other. * * *"

And in Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U.S. 538, at pages 545, 546, 40 S.Ct. 414, at page 417, 64 L.Ed. 705, the Supreme Court said: "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail. * * *"

■ We do not think plaintiff's mark has been infringed by defendant. Sec. 32 (1) of the Trade-Mark Act of 1946, 15 U.S.

C.A. § 1114(1), provides in part: "Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark * * * which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * * shall be liable to a civil action * * *." Defendant's label has no common text with the plaintiff's mark, and it is not a colorable imitation of the plaintiff's trademark taken as an entirety. Only a most careless purchaser of defendant's product could possibly be confused or mistaken that its source of origin was the plaintiff.

■ Nor has the charge of unfair competition been established. Plaintiff's and defendant's labels lack any similarity in appearance except that the background of each has multi-colored stripes and, as we have seen, this is a functional aspect of each label. Defendant did not attempt to palm off its goods as those of the plaintiff. We agree with the trial court that the defendant has taken every reasonable precaution to prevent a confusion of its goods with the product of plaintiff or others.

Judgment affirmed.