294 P.2d 689

Walter W. SPRAGUE and U. S. Fidelity & Guaranty Co., Plaintiffs and Respondents,

v.

BOYLES BROS. DRILLING CO., Defendant and Appellant.

No. 8351.

Supreme Court of Utah.
Feb. 29, 1956.

---

4. Sec. 403, California Vehicle Code.

5. 37 Cal.2d 744, 235 P.2d 3, 5.

Van Cott, Bagley, Cornwall & McCarthy, Grant Macfarlane, Jr., Salt Lake City, for appellant.

Elliott W. Evans, Salt Lake City, for respondents.

CROCKETT, Justice.

Appeal from a judgment awarding Sprague and his surety damages for breach of contract in which Boyles Bros. agreed to break rock into proper size for use by Sprague in constructing a levee on the banks of the Snake River near Rigby, Idaho.

Sprague, the general contractor, let a subcontract to Boyles by which the latter undertook to break into sizes of 50 to 350 pounds a minimum of 12,200 tons of native rock located in Olsen Quarry, to be done concurrent in time with Sprague's carrying out his contract with the Federal Government. Boyles also agreed to furnish any additional rock necessary to complete the contract and any subsequent modifications, provided timely notice was given. Compensation was set at 48 cents for each ton of rock broken to size. Modifications in the prime contract resulted in a requirement to supply 15,400 tons of rock, which Boyles admittedly did not complete.

Sprague sued Boyles for damages resulting from the latter's failure to perform their contract and his consequent inability to perform his prime contract on time. Boyles set up the defense that they were justified in failure to fully perform because of certain claimed breaches by Sprague, and U. S. Fidelity & Guaranty Co., who later undertook to perform as bondsman for Sprague. (Their interests being the same, we will refer to them as Sprague.) Boyles also counterclaimed for damages for such breaches and for money allegedly due them for rock they had broken. The trial court found in favor of Sprague, awarding judgment for the failure to perform plus reasonable attorney's fees as provided in the contract; and also rejected Boyles' counterclaim.

Boyles' first attack on the judgment is that the present action should have been abated because another suit based on the same facts was pending before the district court. On September 22, 1952, plaintiffs' counsel commenced a civil action in the Third Judicial District Court on behalf of Sprague and U. S. F. & G., as joint plaintiffs against Boyles. That complaint was framed on the mistaken belief that the U. S. F. & G. had bonded Boyles; that Boyles had defaulted; that after Boyles' default U. S. F. & G. had performed and thus suffered a loss which it was entitled to recover from Boyles. Defendant's answer admitted that U. S. F. & G. had bonded Boyles, although this was in error. Plaintiffs' counsel later discovered that U. S. F. & G. had bonded Sprague, not Boyles; had performed the contract for Sprague and was subrogated to Sprague's rights to recover against Boyles. He moved to amend the complaint to state a cause of action on this theory. The trial judge refused to allow the amendment or to grant defendant's motion to dismiss with prejudice. Neither party appealed that action, nor was anything further done in that case.

Defendant now urges that the present suit should be abated because the former action is still pending and insists that the order refusing to allow the filing of an amended complaint in the case is a bar to the present action. To sustain this position, defendant cites State v. California Packing Corp., etc.[1] There the District Court sustained a demurrer to plaintiffs' amended complaint; plaintiff refused to plead further and the case was dismissed with prejudice. Upon appeal this court affirmed. Thereafter the State instituted new proceedings and defendant pleaded the dismissal of the first action as a bar to the second one. Justice Wade, for the Court, held that even though plaintiff's original action was dismissed with prejudice, the State was not barred from maintaining another action based on the same general set of circumstances, because the new complaint supplied additional facts and stated a new cause of action; the dismissal with prejudice was determinative only to the extent it determined that the complaint attacked by the demurrer did not state a cause of action.[2]

█ Here there was no dismissal. But even if there had been, plaintiffs would not be foreclosed under our holdings from instituting this action. The issue pleaded in the second suit—whether Boyles were di-rectly liable to Sprague (and by subrogation to U. S. F. & G.)—was not litigated, nor was the same issue pleaded in the first suit. The complaint now supplies new and additional facts which were not before the Court originally; consequently the rule laid down in the California Packing case actually favors plaintiffs here.

Boyles sought to justify their failure to supply the rock specified by the contract because of several claimed breaches of its terms by Sprague, his failure (1) to make the progress payment at the time stipulated, (2) to keep the quarry cleared of rock processed by Boyles, and (3) to supply compressed air as required by the contract.

█ It is to be borne in mind that in reviewing the Court's findings adverse to the defendant, the plaintiffs are entitled to have us consider all of the evidence and every fair inference fairly to be derived therefrom in the light most favorable to plaintiffs,[3] and this is true in an action on contract, as well as in tort.[4]

█ With reference to the alleged breach number (1) above referred to: it appears that on April 20, 1950, Boyles had broken up 12,200 tons of rock and by the contract terms were entitled to receive 75% of the contract price of 48 cents per ton, or 36 cents per ton therefor. It is undis-

1. State v. Calif. Packing Corp., 105 Utah 191, 145 P.2d 784.

2. This principle was affirmed in Frandsen v. Piute Reservoir & Irrigation Co., 106 Utah 378, 148 P.2d 804.

3. Beck v. Jeppesen, 1 Utah 2d 127, 262 P. 2d 760.

4. Cutler Ass'n v. De Jay Stores, 3 Utah 2d 107, 279 P.2d 700.

puted that the payment was not made at that time, and that Boyles withdrew their equipment from the quarry on May 1st. There is evidence that the parties were in disagreement as to whether Boyles had broken the rock into proper size, which might well have justified the failure to make prompt payment; and further, that in July the payment was made to Boyles, and shortly thereafter they returned their men and equipment to the quarry and resumed work on the contract. Under such circumstances, it was not unreasonable for the trial court to assume that Boyles waived any right to rely on this delay in payment as excusing further performance.

■ The alleged breach number (2) listed above relating to the failure to keep the quarry clear of processed rock in accordance with the requirement in the contract that Sprague would remove the rock to "coincide with hauling operations so as not to cause delay," is also answered by Sprague's evidence that the rock was improperly sized and too large to handle, and hence, not in the condition requisite to removal.

■ Claimed breach number (3), that Sprague did not provide sufficient compressed air to operate the drills efficiently according to contract terms, is the one on which Boyles place the greatest emphasis. As against Boyles' evidence concerning that failure, there was testimony that a substantial portion of the longest period of deficiency complained of, that is, between December 20, 1949, and February 3, 1950, occurred before the contract was formally executed by the parties late in January. This indicates that this so-called failure was not of any grave concern to the Boyles. They having signed the contract thereafter, the trial court could reasonably believe that they had waived any such failure and were in no position to complain of it. There was also the statement of one of Boyles' own witnesses that there was sufficient air pressure to operate the drills; and other evidence that lack of compression, which admittedly occurred at times, was temporary, and such as should reasonably be expected to occur on such a job.

■■ Concerning the matter of supplying compressed air, defendant, Boyles, also impute error to the trial court in failing to find specifically whether Sprague supplied "sufficient air to operate the drills efficiently" as the contract required. In his memorandum decision, the judge set forth that Sprague's duties included the obligation to furnish "sufficient air to efficiently operate Boyles' drills," and his findings do recite that Sprague performed his part of the contract, and further state:

"While there were times when Boyles were temporarily hampered by lack of air, they were such as would be reasonably expected to occur on the job, and not sufficient in time or effect to constitute a rescission or cancellation of the contract."

Considering the memorandum decision and the findings together, as may properly be done,[5] manifests that the court found that Sprague had met his obligation to furnish compressed air.

██ The next assignment of error to be considered arises out of the finding above quoted. Boyles insist that the use of the term "rescission" shows that the trial court applied the wrong theory of law in the case in that he was under the impression that any breach by Sprague must have been sufficient to amount to rescission, whereas, any substantial breach by him would have justified Boyles' refusing to further perform. Boyles urges that because this apparently erroneous concept of law underlies the judgment, it should be set aside. It is not to be disputed that, as Boyles contends, different considerations are involved in rescission than in a case which will justify one party in refusing to perform because of breach by the other.[6] But as the eminent authority, Mr. Williston, points out, the term "rescission" is often loosely used "when in truth one party to the contract has merely exercised his right to refuse to perform because of the wrongful conduct of the other party."[7]

We recognize the distinction between the two situations: where a contract has been completely abandoned or otherwise completely rescinded, it has been nullified. But where the contract has merely been breached, in other words, where one party has failed or refused to perform some obligation under it, the contract may still remain in force, and even though it does, the wronged party may be excused from further performance and recover for loss occasioned to him.[8] In the instant case, it is true that the trial court used the term "rescission." Yet the full import of his findings indicates that he did not regard that as the true condition. The most cogent indication thereof is that he found that there was a breach by Boyles and damages flowing therefrom. The contention made by Boyles with respect to such finding cannot defeat the judgment.

Another group of objections to the judgment relates to damages: that there was neither sufficient competent evidence nor definite enough findings thereon to warrant the amounts assessed. The findings with respect thereto were based principally on the evidence of Mrs. Sprague, who kept the books for the plaintiff. Error is assigned

---

**5.** An opinion or memorandum of decision filed by a court sitting as trier of the fact may be consulted where the findings of fact and conclusions of law are inadequate. If that opinion or memorandum contains the findings of fact, that is sufficient. Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 182 F.2d 4, 6, interpreting Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., on which our own rule 52(a) is based.

**6.** Anvil Mining Co. v. Humble, 153 U.S. 540, 14 S.Ct. 876, 38 L.Ed. 814.

**7.** 5 Williston Contracts, Sec. 1303 (Revised Ed.).

**8.** See Restatement of Contracts, Sec. 274 (1).

in receiving certain work sheets containing a compilation of figures and computation of expenses incurred by Sprague in processing rock after Boyles had pulled out of the job, indicating equipment expense of $3,295.28, payroll of $2,289.94, a total of $5,585.22. These work sheets also showed that Sprague credited Boyles with 1,000 tons of oversize rock sold by Sprague from the rock Boyles had processed. The objection made was that the sheets were not original entries made concurrent with the transaction.

It has been held, and we believe the ruling to be a salutary and expedient one, that where original book entries, documents or other data are so numerous, complex, or cumbersome that they cannot be conveniently examined by the fact trier, or where it would materially aid the court and the parties in analyzing such material, that a competent person who has made such examination may present such evidence.[9] This is subject to the limitation that the evidence must be shown to be developed from records, books or documents, the competency of which has been established, and the records must be available for examination by the opposing parties and the witness subject to cross-examination concerning such evidence. The evidence here presented conformed to the above requirements. Mrs. Sprague testified to the manner of keeping the books; she explained the exhibits and the underlying data, consisting of payroll records, invoices, vouchers and cancelled checks, all of which were present in court for inspection and she was there for cross-examination with respect to all of such matters. The trial court did not commit error in overruling the objection and receiving the evidence.

Boyles also insist the *finding* made with respect to additional costs allowed Sprague for operations after Boyles declined to finish performance is insufficient to support the judgment. In that regard the court found: "That by reason of said breaches of said contract on the part of the defendant, the plaintiff, Sprague, suffered damages in the sum of $6,368.85, which sum was necessarily expended by plaintiff, Sprague, in performing those things required by the contract between the plaintiff and the defendant to be performed by defendant over and above all credits given by plaintiff to defendant." In support of their assertion that this finding is too vague and indefinite to support the award of damage Boyles seeks refuge in the case of Duggins v. Colby.[10] In that case the trial court found only that registering sheep adds to their market value, and that by the failure of defendant to have certain sheep registered, plaintiff's damages were equal to the amount for

9. See, Interstate Finance Corp. v. Commercial Jewelry Co., 280 Ill. 116, 117 N. E. 440; see annotation 66 A.L.R. 1206, 1220.

10. 45 Utah 335, 145 P. 1042.

which he compromised with his buyers. On appeal it was held that it was impossible to determine either from the record or the finding whether the judge applied the correct measure of damages.

We do not regard the instant situation as analogous to the Duggins case. From the trial judge's memorandum opinion it appears that he specifically based his award on the amount Sprague had to expend on rock over and above the 48 cents per ton he would have had to pay Boyles under the contract. This was the correct measure of damages so long as Sprague procured the additional rock in the most economical way available. Hence we find this contention of the defendant to be without merit.

 Boyles seek to have excised from the judgment an item of $850 allowed Sprague as partial reimbursement for the penalty suffered for failing to complete construction of the levee within the time set in the prime contract. The penalty provision against Sprague was known to Boyles and thus would have been within the contemplation of the parties had their minds adverted to breach.[11] However, Boyles remonstrates that this delay was occasioned by Sprague's failure to keep the air pressure constant, and that because it was Sprague's fault, he cannot charge Boyles with damages resulting from such delay, citing Russell v. Bothwell & Swaner Co.[12]

Again referring to the judge's memorandum decision, it is obvious that he did apply this rule. He awarded Sprague only $850 of the $1,050 liquidated damage that Sprague was required to pay, stating that "there were some days when Boyles was delayed or slowed by shortage of air, so that Sprague should only charge 17 days against Boyles." Sprague's right to recover such damages is not necessarily precluded by the fact that he also had the right under the contract to put on such additional force as required to finish the contract on time, unless it be shown that he reasonably could have done so, but refused, which fact is not made to appear.

 There are two items claimed by Sprague for which we do not find sufficient support. The first is a charge of $823.15 which Sprague claims was incurred because he was obliged to raise the haulage payment to truckers from 70 to 80 cents per ton. The only evidence respecting this item is the statement of Mrs. Sprague that the truckers complained about having to wait to be loaded; that Mr. Sprague had difficulty keeping truckers hired and on the job and that Sprague initially paid 70 cents per ton and later increased to 80 cents. This evidence does not indicate with any degree of certainty that Boyles' breach led to the increased costs. The raise in rates appears to have been solely a matter of

11. See Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Rep. (1854) 25 C.J.S., Damages, § 24, p. 481ff, 15 Am.Jur. 451ff.

12. 57 Utah 362, 194 P. 1109.

354

agreement between Sprague and the truckers.

The final item we consider is one of $626.67 Sprague asked as compensation for furnishing compressed air for one and one-third months beyond the time the contract should have been performed. The contract clearly required Sprague to furnish the compressed air and neither the evidence nor the findings show that furnishing it beyond the normal time of the contract made the cost to Sprague any greater. There is nothing beyond conjecture that the two items just referred to were properly chargeable as damages against Boyles. Accordingly they must be stricken from the judgment.

Other assignments of error are deemed to be without sufficient merit to warrant discussion. Except as to the two items just mentioned, totalling $1,449.82, by which amount the judgment must be reduced, it is affirmed. Costs to appellants.

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

HENRIOD, Justice (dissenting in part).

Although I agree with portions of the main opinion, there are parts thereof with which I find myself in disagreement.

I do not agree that because the contract was signed after the work had commenced and after the plaintiff had failed to furnish compressed air as agreed, the trial court reasonably could believe that Boyles had waived such failure. It is just as reasonable to believe that Boyles continued the work without waiving the breach, fully intending to hold Sprague accountable for the breach, which a party to a bi-lateral contract well may do.

I cannot agree that the court's finding to the effect that Boyles' being temporarily hampered by lack of air reasonably would be expected, is justified. If Sprague agreed to furnish air, failure to furnish it cannot be justified by saying such failure is to be expected, temporarily or otherwise. Rather, it reasonably could be expected that it would be furnished at all times as agreed.

I cannot agree that the court used an elementary word like "rescission" in a "loose" way, and that it therefore did not mean what it said. To suggest differently is to discredit the court's competency.

I do not subscribe to the idea that data should be summarized and presented that way simply because it is so cumbersome that it "cannot be conveniently examined by the fact trier." If it is too cumbersome conveniently to be examined by the fact trier, by the same token it is too cumbersome to be examined into by cross-examination.

I am not in accord with the conclusion that Boyles should be charged with any penalty arising out of a bond which Sprague obtained. Such penalty was not mentioned in the contract between Boyles and Sprague, and is completely foreign to damages that naturally would flow from a contract that did not mention it.