JARET INTERNATIONAL, INC., and M & A Candy Co. Ltd., Plaintiffs,

v.

PROMOTION IN MOTION, INC., and Michael G. Rosenberg, Defendants.

No. 91–CV–4092.

United States District Court, E.D. New York.

June 16, 1993.

Sutton, Basseches, Magidoff & Amaral, New York City, for plaintiffs (Paul J. Sutton and Barry G. Magidoff, of counsel).

Cowan, Liebowitz & Latman, P.C., New York City, for defendants (Mary L. Kevlin and Sheri Rosenfeld, of counsel).

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

This is a lawsuit alleging consumer confusion between the packages of two sour candy brands, "SOUR PATCH KIDS," and "SOUR JACKS." Plaintiffs allege four causes of ac-

tion as follows: (1) trade dress infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988); (2) violation of New York State common law of unfair competition; (3) violation of N.Y. General Business Law § 368–d; and (4) violation of N.Y. General Business Law § 349–50. Plaintiffs seek monetary damages and injunctive relief.

## I. Background

Plaintiff M & A Candy Co. Ltd. ("M & A") is a Canadian corporation which manufactures SOUR PATCH KIDS candy. Plaintiff Jaret International, Inc. ("Jaret") is a New York corporation which is the exclusive United States distributor of SOUR PATCH KIDS. Defendant Promotion In Motion, Inc. ("Promotion") is a New Jersey corporation which manufactures and distributes SOUR JACKS candy and its President is defendant Michael G. Rosenberg. Both plaintiffs' SOUR PATCH KIDS and defendants' SOUR JACKS are molded, colored, fruit-flavored and starch-based candies. These candies are coated with a granular acid that gives them a sour taste. They are sold primarily to children who purchase them in movie theaters.

Plaintiffs began selling SOUR PATCH KIDS in 1984 and in 1986 began selling it in a 1.5 oz. cellophane bag at stores. They introduced a 3.5 oz. paper box for sale at movie theaters in 1990. That same year defendants began selling SOUR JACKS. SOUR JACKS are sold in a 1.5 oz. cellophane bag at stores and in a 3.5 oz. paper box at movie theaters.

At least by 1991, plaintiffs' candy became the leading seller in the movie theater market for sour candies. Gross sales for SOUR PATCH KIDS 1.5 oz. bag were $129,383 in 1989, $859,332 in 1990, $1,089,738 in 1991, and $1,412,979 in 1992. Gross sales for the 3.5 oz. box were $466,938 in 1990, $1,347,516 in 1991, and $1,574,968 in 1992. Pl. Galatolie Decl. ¶ 2. These sales figures take into account price reductions of approximately 10–15% instituted following the introduction of SOUR JACKS. *Id.* at ¶ 4. Comparable gross sales figures for defendants' candy have not been presented to the Court.

Plaintiffs' 1.5 oz. and 3.5 oz. packages share a design intended to appeal to children.

A cartoon caricature of the head of a blond-haired boy with an open mouth, dangling tongue and crossed eyes is displayed within a red starburst. The boy is situated to the left of a clear plastic display window through which the candy is seen. Five colored figures resembling the shape of the candy are scattered at various angles around the boy and the plastic window. The SOUR PATCH KIDS mark runs horizontally across the top of the packages above the boy and the plastic window. The mark lettering is balloon style in green, orange, and red. SOUR PATCH KIDS packaging uses bright yellow as its background color.

Defendants' 1.5 oz. and 3.5 oz. packages share many features. A cartoon caricature of a blond-haired boy with a puckered mouth and upturned eyes is displayed to the left of a clear plastic display window through which the candy is seen. The boy appears from the waist up, wears a green shirt, red baseball cap and leans away from the plastic window. There is a cartouche over the boy with the tag line, "MOUTH–PUCKERING CANDY." The SOUR JACKS mark runs horizontally across the top of the packages above the boy and the plastic window. The 3.5 oz. box uses white, green, yellow and red horizontal stripes as background colors.

In 1991, after the instant suit began, defendants modified their 1.5 oz. and 3.5 oz. packages. The brand name lettering on both packages, which had been balloon style in orange, green and red, was squared off. Defendants also further revised the 1.5 oz. bag. The mark lettering is now all red. The background colors were changed from yellow, green, orange, and red to neon green with small horizontal bands of orange, yellow and red running along the lower quarter of the package. The boy is now on the right side of the plastic window and his hair color is now orange. The revised 1.5 oz. bag went on sale in May 1992.

Defendants, who deny all allegations, now move pursuant to Fed.R.Civ.P. 56 for summary judgment.

## II. Discussion

Summary judgment is proper only when, "viewing the facts in the light most favorable

to the nonmovant, the court can determine that 'there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.'" *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993), quoting *Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). The Court must resolve all ambiguities and draw all doubtful inferences against the moving party. *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 572 (2d Cir.1991). The Court will apply these well recognized summary judgment standards to each cause of action *infra.*

### A. First Cause of Action: Lanham Act § 43(a) Trade Dress Infringement

The trade dress infringement claim is most efficiently resolved by discussing the demands for (1) monetary damages and (2) injunctive relief as follows:

#### 1. Monetary Damages

The focus of defendants' motion is against plaintiffs' claims for monetary damages under § 43(a) of the Lanham Act.[1] A plaintiff seeking monetary damages under § 43(a) "must introduce evidence of actual consumer confusion" unless it can "adequately demonstrate that a defendant has intentionally set out to deceive the public" through product infringement. *Resource Dev. v. Statute of Liberty-Ellis Island,* 926 F.2d 134, 139–40 (2d Cir.1991). Actual consumer confusion is typically "demonstrated through the use of direct evidence, e.g., testimony from members of the buying public, as well as through circumstantial evidence, e.g., consumer surveys or consumer reaction tests." *PPX Enterprises v. Audiofidelity Enterprises,* 818 F.2d 266, 271 (2d Cir.1987).

#### a. Evidence of Actual Consumer Confusion

■ With respect to the 3.5 oz. boxes, plaintiffs' direct evidence of actual confusion is limited to one misdirected order to Jaret for SOUR JACKS related in the deposition of Paul Sciortino, President of American International Concession Products, Inc. ("AICP").[2] Def.Ex. D., Sciortino Dep. at 127–29. AICP is a sales representative of the plaintiffs. This instance of actual confusion must be considered within the context of the overall sales of SOUR PATCH KIDS. *See C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.,* 753 F.2d 14, 18 (2d Cir.1985). Evidence of actual confusion cannot be "insignificant" or "*de minimus*" when contrasted to overall sales. *Id.; Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 48 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). The mistaken order cannot be contrasted with SOUR PATCH KIDS overall sales because the amount of the order is not indicated. Therefore, the direct evidence of actual confusion on the 3.5 oz. boxes is itself insufficient to stave off summary judgment.

■ Plaintiff's direct evidence of actual consumer confusion on the 1.5 oz. bags is limited to the statement of David R. Bailey, President of Peachtree Sales & Marketing, Inc., a sales representative of plaintiffs. Bailey relates a statement made by Jimmy Stewart of Stewart Candy Co. that Stewart told him that he purchased SOUR JACKS candy when he meant to purchase SOUR PATCH KIDS. Pl. Bailey Decl. ¶ 3–4. Rule 56(e) of the Federal Rules of Civil Procedure provides that when an affidavit is used to oppose a summary judgment motion, it "shall set forth such facts as would be admissible in evidence...."[3] Thus, "hearsay testimony

---

1. § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988), reads in pertinent part:

   Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the

origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

2. The Court has not been informed about the date and amount of this mistaken order.

3. Since the Bailey Declaration is signed under penalty of perjury pursuant to 28 U.S.C. § 1746, it is the functional equivalent of an affidavit.

... that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e) ] affidavit." *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454–55 (2d Cir.1991), quoting *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir.1986) (internal quotations omitted). The Bailey Declaration recites what Stewart said to him and is therefore inadmissible hearsay under Fed.R.Evid. 801–02.

Plaintiffs' remaining evidentiary source of actual consumer confusion on the 3.5 oz. boxes is a consumer survey conducted by RL Associates ("RL Survey"). Pl. Rappeport Decl. and Supp.Decl. The RL Survey questioned 44 randomly selected children ranging from eight to thirteen years of age. The surveyors questioned the children in a shopping mall in Menlo Park, New Jersey, and showed them 3.5 oz. box panels of SOUR PATCH KIDS, SOUR JACKS, "SOUR DOUGH," and "SATHER'S SOURS" sour candies with the words "PATCH KIDS," "JACKS," "DOUGH," and "SATHERS," respectively, cut from them. The children were asked to look at the redacted package panels and say whether they knew the full name of the candies. The results showed that 36% of the children identified the SOUR JACKS box as SOUR PATCH KIDS. Pl. Rappeport Decl. ¶ 6–7.

Survey evidence proffered to show actual or likelihood of confusion must satisfy seven requirements designed to test the trustworthiness of the survey methodology. These requirements are set forth in *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1205 (E.D.N.Y.1983), as follows:

(1) the "universe" [product market] was properly defined; (2) a representative sample of that universe was selected; (3) the questions to be asked of the interviewees were framed in a clear, precise and nonleading manner; (4) sound interview procedures were followed by competent interviewers who had no knowledge of the litigation or the purpose for which the survey was conducted; (5) the data gathered was accurately reported; (6) the data was analyzed in accordance with accepted statistical principles; and (7) the objectivi-

ty of the entire process was assured. *See Callmann on Unfair Comp, Trademarks & Monopolies* § 20.63.50 at 536 (4th ed. 1992).

In testing the RL Survey against *Toys "R" Us* factors two and four, it is clear to the Court that it is fatally flawed.

*Toys "R" Us* factor two requires that the "appropriate universe ... include a fair sampling of those purchasers most likely to partake of the alleged's infringer's goods...." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *Callmann, supra*, § 20.63.50 at 537–38. The RL Survey was conducted in a mall where only SOUR PATCH KIDS is sold, thereby minimizing the probability that a fair sampling of SOUR JACKS purchasers was included. Def. Rosenberg Reply Decl. ¶ 1. This deficiency is even more drastic than in *Amstar, supra*, where the court rejected a consumer survey offered by plaintiff, the maker of Domino Sugar, because of the ten cities in which the survey was conducted, eight had no outlets of defendant, the owner of Domino's Pizza stores, and the remaining two had outlets which had been open for less than three months.

*Toys "R" Us* factor four requires that survey interview procedures approximate "actual market conditions" through which the disputed products are sold in order to be of probative value on the issue of confusion. *Mattel, Inc. v. Azrak–Hamway Intern., Inc.*, 724 F.2d 357, 361 (2d Cir.1983); *Callmann, supra*, § 20.63.50 at 541. Since there is no dispute that either SOUR PATCH KIDS or SOUR JACKS purchasers would ever purchase these products without the full marks on the boxes, the survey technique of removing portions of them is suspect. In *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 661 n. 4 (2d Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980), the court cited a "critical" defect in a survey where references to the name "AMERICAN," the manufacturer of "BIONIC" boots, were removed when boots were shown to interviewees. Under normal marketing conditions at shoe stores, references to AMERICAN were prominently

advertised to consumers along with the boots. By removing portions of the marks, the RL Survey has the same methodological defect as the one cited in *American Footwear*. The Court finds that the RL Survey is inadmissible because of its unrepresentative sample and its untrustworthy methodology.

### b. *Presumption of Actual Consumer Confusion*

■ Plaintiffs' alternative means to obtain monetary damages is to rely on a presumption of actual consumer confusion, which is available only "upon a showing of deliberate or intentional deception on the part of the defendant." *Resource Dev., supra*, 926 F.2d at 139. Plaintiffs resort to this alternative by questioning Rosenberg's claimed ignorance about SOUR PATCH KIDS at the time he decided to enter the sour candy market. Since the SOUR JACKS packages were independently designed for Rosenberg by Carelton Friedman, plaintiffs' theory requires that Rosenberg transmitted specific design instructions following SOUR PATCH KIDS to Friedman. However, the record does not support the existence of any scheme involving the designer.

Friedman's assertions that he had neither seen nor heard of SOUR PATCH KIDS at the time he created the SOUR JACKS packaging, that Rosenberg never gave him specific design instructions, and that he independently modeled his design on his BUDDY BEAR'S GUMMI BEARS and TOYS "R" US soft candy package designs for defendants stand uncontradicted. Def. Friedman Decl. ¶¶ 4–11. Friedman's explanation is substantiated by the striking similarities among the BUDDY BEAR GUMMI BEARS, TOYS "R" US and SOUR JACKS package designs. The similarities include size, horizontal shape, colored balloon style lettering, colored horizontal banding on the bottom-half of the package, plastic display windows, and a car-

toon character appearing on the left hand side of each window. The BUDDY BEAR'S GUMMI BEARS character is a brown bear wearing a red bow and the TOYS "R" US character is a giraffe. Def.Mem.L.Ex. A; Def.Ex. BB, CC. Thus, plaintiffs' case for "patently fraudulent" or "egregious" conduct, *PPX Enterprises, supra*, 818 F.2d at 272–73, begins and ends with speculation about Rosenberg and consequently must fail at this stage in the proceedings.[4] *See Resource Dev., supra*, 926 F.2d at 141. The plaintiffs' claim for an award of profits, which similarly requires a finding of willful deceptiveness, must also fail. *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992). Accordingly, defendants' motion for summary judgment on the plaintiffs' Lanham Act claim for monetary damages is granted.

### 2. *Injunctive Relief*

■ In contrast to monetary damages under § 43(a), injunctive relief can be awarded upon proof of a likelihood of confusion among an appreciable segment of the consuming public. *Resource Dev., supra*, 926 F.2d at 139. Plaintiffs seek such injunctive relief for alleged trade dress infringement. Trade dress is a broad term which encompasses the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics. *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir.1992). The proper focus under 43(a) is on "the *entire* look of the product or packaging ... [and] ... each aspect should be viewed in relation to the entire trade dress." *Id.* A plaintiff seeking trade dress protection under § 43(a) must as a threshold matter prove that its dress is either inherently distinctive or has secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2753, 2760, 120 L.Ed.2d 615 (1992). Then

---

**4.** That an October, 1990 prototype box for SOUR JACKS listed the same ingredients in the same order as SOUR PATCH KIDS (and as "BLOCK-HEADS" sour candy) has no bearing on the question of deliberate deception. The SOUR JACKS ingredient list was subsequently revised to reflect the addition of an acid not found in SOUR PATCH KIDS. This modified ingredient

list is the only one which has ever been sold to the public. Plaintiffs cannot ascribe a fraudulent intent on the part of defendants to confuse consumers when consumers have only seen different ingredient lists reflecting different sour candy formulations. *See Johnson & Johnson * Merck v. Smithkline Beecham*, 960 F.2d 294, 299 (2d Cir. 1992).

the plaintiff must prove that the "dress of a 'junior user'—one who has adopted its mark or dress later than the 'senior user'—is likely to cause consumer confusion as to the source of the product...." in order to prevail. *Bristol–Myers, supra.* This analysis requires the Court to carefully inspect and compare the disputed packages.

### a. *Inherent Distinctiveness*

■ A trade dress is inherently distinctive if it is fanciful or arbitrary rather than descriptive or generic.[5] *Taco Cabana Intern., Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1120 & n. 8 (5th Cir.1991), *aff'd on other grounds, Two Pesos, supra,* —— U.S. at ——, 112 S.Ct. at 2753; *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1537 (11th Cir.1986); *Wiley v. American Greetings Corp.,* 762 F.2d 139, 141 (1st Cir.1985). The question of inherent distinctiveness is decided by reference to the factors set forth in *Seabrook Foods, Inc. v. Bar–Well Foods, Ltd.,* 568 F.2d 1342, 1344 (C.C.P.A.1977), as follows:

> whether [the trade dress is] a "common" basic shape or design, whether it [is] unique or unusual in a particular field, whether it [is] a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods, or whether it [is] capable of creating a commercial impression distinct from the accompanying words. *See AmBrit, supra,* 812 F.2d at 1536; *Wiley, supra.*

Defendants correctly argue that the SOUR PATCH KIDS trade dress contains many forms of ornamentation which are widely used in the candy industry. A host of candy brands, including "M & M's" peanuts, "DOTS," and "TEAR JERKERS" extra sour bubble gum, use yellow as a background color. Def.Ex. H. A similarly wide range of candy products, including BUDDY BEAR'S GUMMI BEARS, "BONKERS," "BLOCK-HEADS" sour candy, TEAR JERKERS, and "CRY BABY TEARS" extra sour candy, use colored lettering or color schemes in order to identify the colors of candy contained inside their packages. Def.Mem.L.Ex. A, Def.Ex. I, L; *see Life Savers Corp. v. Curtiss Candy Co.,* 182 F.2d 4, 7 (7th Cir.1950). At least two other sour candy brands, BLOCK-HEADS and CVS sour bears, and many other candy brands, including BUDDY BEAR'S GUMMI BEARS, "CHUCKLES," and TEAR JERKERS, use a plastic display window. Def.Mem.L.Ex. A; Def.Ex. J; *see Original Appalachian Artworks v. Blue Box Factory,* 577 F.Supp. 625, 631 (S.D.N.Y. 1983).[6] Several candy brands, including BUDDY BEAR'S GUMMI BEARS, TOYS "R" US GUMMI BEARS, and "CHARMS BLOW POPS" bubble gum, show a cartoon figure situated to the left of a plastic window. Def.Mem.L.Ex. A; Def.Ex. J, CC. Other candy brands, including CHARMS BLOW POPS, "FACE SLAMMERS" super sour bubble gum, TEAR JERKERS, "RED HOT DOLLARS," and "JUJYFRUITS," show a cartoon image of a boy on their packages. Def.Ex. J, K, L. Most significantly, at least one other sour candy brand, CRY BABY TEARS, shows a cartoon image of a blond haired boy with a facial expression suggestive of the sourness of the candy. Def.Ex. L.

■ These third-party usages of many of SOUR PATCH KIDS' salient trade dress features raise questions about its inherent distinctiveness. In *AmBrit, supra,* 812 F.2d at 1537, a similar objection was posed, and the court stated that, "third party use of one or more suggestive or arbitrary elements of a plaintiff's trade dress renders that trade dress indistinct only if the third party use is so extensive and so similar to the plaintiff's that it impairs the ability of consumers to use the trade dress of the products to identify

---

**5.** Prior to *Two Pesos, supra,* the Second Circuit followed the rule that a trade dress was eligible for protection under § 43(a) only if it had secondary meaning. *Bristol–Myers, supra.*

**6.** Defendants raise a functionality defense by pointing to the functional coloration and plastic windows on the packages. The fact that particular elements of plaintiffs' trade dress are func-

tional does not automatically render the "combination and arrangement of design elements" functional. *Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 76 (2d Cir.1985). Plaintiffs have raised sufficient factual questions concerning the overall nonfunctionality of their trade dress to withstand summary judgment on this defense.

their source." While third-party usages here are both extensive and similar, there is no evidence that the ability of consumers to the use the trade dresses for identification purposes is impaired. Thus, summary judgment on the question of inherent distinctiveness is not appropriate.

### b. *Secondary Meaning*

Plaintiffs alternatively attempt to establish an entitlement for § 43(a) trade dress protection by showing secondary meaning. Pl. Opp.Mem.L. at 15. Defendants refrained from moving for summary judgment on this issue because they contend that the Court need not reach it in order to rule in their favor. Def.Mem.L. at 16 n. 5. Therefore, the Court will not address whether the "rigorous evidentiary requirements" necessary to prove secondary meaning could be met in this case at this time. *20th Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir.1987), quoting *20th Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 747 F.2d 81, 90 (2d Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985) (internal quotations omitted).

### c. *Likelihood of Confusion: The Polaroid Factors*

Plaintiffs must also prove that there is a likelihood of confusion between the two dresses in order to prevail. The question of likelihood of confusion is analyzed by following the eight-factor test set forth by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). *Bristol–Myers, supra*, 973 F.2d at 1043. The *Polaroid* factors are (1) the strength or inherent distinctiveness of the senior user's dress; (2) the degree of similarity between the two dresses; (3) the competitive proximity of the products; (4) the likelihood that the senior user will bridge the gap between the two products; (5) actual confusion; (6) the junior user's good faith in adopting the dress; (7) the quality of the junior user's product; and (8) the sophistication of the consumers. *Polaroid, supra*, 287 F.2d at 495; *Bristol–Myers, supra*, 973 F.2d at 1043–44. The *Polaroid* factors are not exhaustive and must be balanced within the

context of one another in order to determine whether a likelihood of confusion on the part of an appreciable segment of the consuming public exists. *Id.*

*Polaroid* factor one asks whether the SOUR PATCH KIDS trade dress is strong or weak. Many elements of the dress are functional. As stated *supra*, even with respect to those elements which might be considered arbitrary or suggestive, there is extensive and similar third-party use of them in the candy industry. Thus, even if the SOUR PATCH KIDS trade dress is inherently distinctive or has secondary meaning, it is weak. *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 581 (2d Cir.1991).

*Polaroid* factor two questions the degree of similarity between the two trade dresses. Here defendants' 3.5 oz. box and revised 1.5 oz. bag must be compared separately against plaintiffs' corresponding packages. With respect to SOUR PATCH KIDS and SOUR JACKS 3.5 oz. boxes, the most striking similarity is the nearly identical placement of a boy on the left hand side of a display window. Both boys have blond hair, prominent eyes and facial expressions conveying the sourness of the candy.

There are numerous differences as well. These include the prominent display of different brand names in what are now different lettering styles. *See Bristol–Myers, supra*, 973 F.2d at 1046. The descriptive term SOUR is used in a wide variety of sour-flavored candy marks ranging from "SOUR DUDES" to "SOUR BEASTIES." Def. Kevlin Decl. ¶ 7; Ex. F. Given the undisputed lack of originality or uniqueness of the term SOUR, *see e.g., Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir.1983), consumers can easily distinguish between these composite marks because the dominant latter parts of each mark, *i.e.*, PATCH KIDS and JACKS, are quite distinct from one another. *See also American Cyanamid Corp. v. Connaught Laboratories, Inc.*, 800 F.2d 306, 309 (2d Cir.1986) ("HibVAX" does not infringe "HIB–IMUNE" because dissimilarity of suffixes offsets identity of prefixes); *see* 2 T. McCarthy, *Trademarks and Unfair Competition* § 23:15 (2d ed. 1984). In addition, the SOUR JACKS boy

wears a large red baseball cap, green shirt, and says "MOUTH PUCKERING CANDY," while the SOUR PATCH KIDS boy is capless, appears without a body and says nothing. The SOUR PATCH KIDS box includes colored representations of the candy which are absent from the SOUR JACKS box. Despite these differences, the overall look of both 3.5 oz. boxes is sufficiently similar to weigh this *Polaroid* factor in plaintiffs' favor.

In contrast, with respect to the 1.5 oz. bags, the second *Polaroid* factor tips decidedly in favor of defendants because the overall appearances of the bags are very different. The SOUR PATCH KIDS bag is bright yellow and horizontally-shaped while the revised SOUR JACKS package is neon green and vertically-shaped. There is but one small horizontal band of yellow coloring on the SOUR JACKS bag. The revised SOUR JACKS boy is situated to the right of the display window, while the SOUR PATCH KIDS boy, with revised orange hair coloring, is on the left. These differences outweigh any similarities.

■ The remaining *Polaroid* factors can be mentioned briefly. The third factor is the competitive proximity of the products. There is no dispute that the parties are in direct competition in the sour candy market. The 3.5 oz. boxes compete in theaters and the 1.5 oz. bags compete in stores. The fourth factor is the likelihood of bridging the gap, which is not a relevant inquiry here. The fifth factor is actual confusion. The analysis *supra* on the lack of credible evidence of actual confusion is a sufficient basis to weigh this factor in defendants' favor. The sixth factor is good faith. The analysis *supra* on the lack of credible evidence on intentional misconduct is a sufficient basis to weigh this factor in defendants' favor. The seventh factor is the quality of the junior user's product. The parties make self-serving assertions about the quality of their candies but no expert opinion or empirical evidence was offered on this issue. The eighth

*Polaroid* factor is the sophistication of the buyers. The parties agree that children are the most important segment of the sour candy market and the disputed trade dresses try to appeal to them. The sophistication of children as buyers of candy remains an open question because of the lack of credible evidence on the subject.

*Polaroid* finally requires that the eight factors be weighed together in order to reach an ultimate conclusion about likelihood of confusion. With respect to the 3.5 oz. boxes, balancing the factors yields a sufficiently close result such that plaintiffs avoid the finality of summary judgment.

■ However, with respect to the 1.5 oz. bags, balancing the factors yields the conclusion that there is no likelihood of confusion. Even assuming both that children are unsophisticated purchasers and that SOUR JACKS is an inferior product, the weakness of the SOUR PATCH KIDS trade dress, the decidedly different overall appearances of the 1.5 oz. bags, and the lack of evidence of actual confusion and bad faith justify this finding.

B. *Second Cause of Action: New York Common Law of Unfair Competition*

■ In order to prevail under the New York common law of unfair competition, plaintiffs must demonstrate a likelihood of confusion between the two products. *Bristol–Myers, supra,* 973 F.2d at 1048. The analysis *supra* on likelihood of confusion is a sufficient basis to grant summary judgment in favor of defendants with respect to their 1.5 oz. bag, and to deny summary judgment with respect to their 3.5 oz. box.

C. *Third Cause of Action: New York General Business Law § 368–d*

■ Plaintiffs seek injunctive relief under N.Y. General Business Law § 368–d, which is commonly referred to as New York's anti-dilution statute.[7] In *Mead Data Cent., Inc. v. Toyota Motor Sales, Inc.* 875 F.2d 1026,

7. N.Y. General Business Law § 368–d (McKinney 1988) reads as follows:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

1029 (2d Cir.1989), the Court held that disputed marks "must be 'very' or 'substantially' similar and that, absent such similarity, there can be no viable claim of dilution." The analysis *supra* concerning similarity of the trade dresses is a sufficient basis to conclude that the anti-dilution claim must fail against defendants' 1.5 oz. bag, but not against their 3.5 oz. box.

### D. *Fourth Cause of Action: New York General Business Law §§ 349–350*

■ Defendants finally object to the claim premised on N.Y. General Business Law §§ 349–350, which is designed to remedy deceptive trade practices.[8] Most federal trademark and trade dress infringement claims are deemed to "fall outside the original intent of §§ 394 and 350 . . . ." R. Givens, *Practice Commentaries on N.Y.Gen.Bus.Law § 349* at 567 (McKinney 1988), quoted by *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 786 F.Supp. 182, 215 (E.D.N.Y.1992), *aff'd in part, rev'd in part, Bristol–Myers, supra,* 973 F.2d at 1033. Defendants therefore argue that this "garden variety" Lanham Act case is outside the ambit of §§ 349–350. Def.Mem.L. at 32 n. 10. Plaintiffs do not oppose this characterization and neither does the Court. Accordingly, this claim must fail as a matter of law. *Bristol–Myers, supra,* 786 F.Supp. at 215–16.

### III. Conclusions

After careful consideration, the Court hereby determines that defendants' motion for summary judgment against the claim for monetary damages under the first cause of action is GRANTED. Defendants' motion against the claim for injunctive relief under the first cause of action is GRANTED with respect to their 1.5 oz. bag, but DENIED with respect to their 3.5 oz. box. Defendants' motions on the second and third causes of action are GRANTED with respect to their 1.5 oz. bag, but DENIED with respect to their 3.5 oz. box. Defendants' mo-

tion on the fourth cause of action is GRANTED.

SO ORDERED.

8. N.Y. General Business Law § 349(a) (McKinney 1988) reads as follows:

Deceptive acts or practices in the conduct of any business, trade or commerce or in the fur-

nishing of any service in this state are hereby declared unlawful.